```
_____ FILED      _____ LODGED
_____ RECEIVED   _____ COPY

        OCT  4 2001

    CLERK U.S. DISTRICT COURT
      DISTRICT OF ARIZONA
    BY_____ DEPUTY
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Francisco Camarena Macias,<br><br>    Defendant. | CR 91-446-TUC-FRZ (NFF)<br><br>**REPORT & RECOMMENDATION** |

    On September 18, 2001, this matter came on for a hearing on the Government's Motion for Disqualification Due to Conflict of Interest and Defendant's Motion to Quash Subpoena. On this same date, the Magistrate Judge also heard counsel *in camera*. The transcript of the *in camera* proceeding has been sealed and is a part of the record considered by the Magistrate Judge. Based upon the record, including the parties' briefs, the transcript of the hearing and *in camera* proceeding, in addition to a sealed affidavit filed by Mr. Ralls, counsel for Defendant, and Defendant's September 21, 2001 affidavit, the Magistrate Judge recommends that the District Court, after its independent review of this record, deny the Government's Motion and grant Defendant's Motion.

    Defendant is named, together with four others, in a Third Superceding Indictment charging 21 counts. Defendant is named in four counts and is charged with conspiracy to import approximately 10,504 pounds of cocaine in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(B)(ii), and 18 U.S.C. §2, all in violation of 21 U.S.C. §963 (Count 1); conspiracy to possess with intent to distribute approximately 4,600 pounds of marijuana and



approximately 10,504 pounds of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), 841(b)(1)(A)(ii)(II), and 18 U.S.C. §2, all in violation of 21 U.S.C. §846 (Count 2); knowingly and intentionally importing 2,258 pounds of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(B)(ii), and 18 U.S.C. §2 (Count 19); and knowingly and intentionally possessing with intent to distribute approximately 2,258 pounds of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii)(II), and 18 U.S.C. § 2 (Count 20). (August 8, 2001 Third Superceding Indictment) The conspiracy is alleged to have run October 1987 through May 1990.

The Government contends that in a related case, on September 7, 1988, Jorge Enrique Roman and others were charged by Superceding Indictment in CR 88-288-TUC-ACM with "conspiracy to possess with intent to distribute cocaine; possession with intent to distribute cocaine; five kilograms or more; and aiding and abetting." (Government's Supplemental Motion for Disqualification, p.1 & Ex.A) That Indictment (CR 88-288-TUC-ACM) arose from a 1988 seizure of cocaine at a ranch near Double Adobe, Arizona. On January 10, 1989, Mr. Roman, who was represented by Mr. Ralls, pled guilty to the conspiracy and agreed to cooperate with the Government. (Id at pp.1-2) Counts 15 and 16 of the instant Indictment arise out of that Double Adobe seizure. (Government's Motion, p.2)

In June, 2001, Defendant Camarena Macias was extradited from the Republic of Mexico for prosecution on the instant charges. (Defendant's Response to Government's Motion for Disqualification, p.6) The other defendants named in the instant Indictment in case 91-446 remain at large. (Id.)

The Government argues that Defendant's counsel, Stephen Ralls, should be disqualified for three reasons: (1) because Mr. Ralls previously represented Mr. Roman, (2) because Mr. Ralls previously represented Arturo Loera-Guzman[1] who the parties agree is the

---

[1] At oral argument the parties referred to Arturo Loera-Guzman and Arturo Guzman-Loera. The Government, in its Addendum to Government's Supplemental Motion for Disqualification of Counsel Due to Conflict of Interest, refers to Arturo Guzman Loera.

brother of Joaquin Guzman, the alleged central figure in the instant conspiracy, and (3) because the instant Defendant filed a Financial Affidavit of Indigence and obtained court-appointed counsel prior to retaining Mr. Ralls as counsel.

**DISCUSSION**

SUBPOENA

On August 21, 2001, the Government issued a subpoena duces tecum for Mr. Ralls to produce certain information and documents regarding the attorney fee arrangements and identity of the fee payer for Defendant. Defendant has filed a Motion to Quash that subpoena.

At oral argument, the Government stated that it need not see the information subpoenaed as long as the Court reviewed that information, and the parties agreed that Mr. Ralls would file a sealed affidavit with the Court pertaining to the identity of the fee payer. (TR. p.7) On September 21, 2001, Mr. Ralls filed the sealed affidavit. Accordingly, Defendant's Motion to Quash Subpoena should be granted.

DISQUALIFICATION

The Government argues that Mr. Ralls' representation creates a conflict of interest in violation of the Sixth Amendment because he has previously represented Mr. Roman and Mr. Loera-Guzman. As to Mr. Roman, the Government stated as follows:

> the first problem, which may not be insurmountable, is Jorge Enrique Roman. On July 17 of 1988, customs participated in the investigation and the arrest of several people at a location in southern Arizona which they called Double Adobe. 1,286 pounds of cocaine were seized. This seizure is part--is Counts 15 and 16 of the [I]ndictment with which [Defendant] is charged. However, he is not himself charged in Counts 15 and 16...[T]he [G]overnment concedes that Mr. Roman will not testify to anything directly implicating [Defendant] in this conspiracy. Nonetheless, if Roman is called to testify, he will provide information on the Double Adobe incident which is part of the overall conspiracy, Counts 1 and 2, with which [Defendant] is charged. And I think that that alone is problematic.

(TR. pp.2-3) The Government also stated that Mr. Roman "will probably" be called to testify at the instant trial, however, "it is my understanding Mr. Roman may not be a very good

witness. And if I can get through the Double Adobe part of the case without calling Mr. Roman, I might very well do that." (Id. at p.14)

Defendant submits Mr. Roman's affidavit stating that he does not know Defendant and that he does not believe that Defendant has any information that could implicate him in any criminal wrongdoing. Additionally, Mr. Roman waives any conflict of interest that may arise out of Mr. Ralls' representation of Defendant.

As to Mr. Arturo Loera-Guzman, the record reveals that Mr. Ralls represented Mr. Loera-Guzman in 1989 when Mr. Loera-Guzman was apprehended at the Douglas port of entry as he was attempting to leave the United States with $1,200,000 in cash that he failed to declare. Mr. Ralls represented Mr. Loera-Guzman at a detention hearing. Mr. Loera-Guzman was released on bail, "apparently there was some kind of plea bargain worked out and Mr. Loera-Guzman failed to appear for sentencing." (TR. p. 9) At oral argument, Defendant pointed out that Mr. Loera-Guzman is not named in any of the three Indictments, "88-288 [naming Mr. Roman] or the original 91-446 or the super[c]eding 91-446 [naming Defendant]. There [are] no ties at all of that individual to this [I]ndictment." (Id. at p.13) The Government agreed that Mr. Loera-Guzman is "not named...as an unindicted co-conspirator or in any way. The only observation that I have is the one I made to the Court. It is during the same time frame and involves an amount of money commiserate with this activity. But he is not charged. Our concern is that we believe...he is the brother of Joaquin Guzman who is a central figure and is charged in this conspiracy." (Id. at p.14) Defendant does not dispute that Mr. Loera-Guzman is the brother of Joaquin Guzman who is named in the instant Superceding Indictment. (Id. at p. 25)

Additionally, Mr. Ralls pointed out that:

> the question really becomes: How is Arturo Loera involved in this case? The fact that I may have represented him, the way that I represent a lot of family members, does not mean because I represent one family I have a conflict in another situation.
> I guess I don't know, you know, what facts exist, and at this point the Government doesn't tell me any facts, that somehow or another would raise my representation of a brother of a codefendant as a conflict in this case.

-4-

(Id. at pp. 26-27)

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to assistance of counsel. *Wheat v. United States,* 486 U.S. 153, 158 (1988). "While the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* at 159. "In seeking to disqualify a defendant's chosen counsel, the government bears a heavy burden of establishing that concerns about the integrity of the judicial process justify the disqualification." *United States v. Washington,* 797 F.2d 1461, 1464 (9th Cir. 1986); *see also United States v. Matta-Timmins,* 81 F.Supp.2d 193 (D.Mass. 2000) (On motion for disqualification, the "government bears a heavy burden to establish that disqualification is justified.")

"Under the [S]ixth [A]mendment, a criminal defendant has the right to be represented by counsel whose loyalties are undivided." *United States v. Allen,* 831 F.2d 1487, 1494 (9th Cir. 1987) (citing *Wood v. Georgia,* 450 U.S. 261, 271 (1981)). Therefore, although the presumption is that a criminal defendant may have counsel of his choice if he can pay for it and counsel is willing, that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. *United States v. Stites,* 56 F.3d 1020, 1024 (9th Cir. 1995) (quoting *Wheat,* 486 U.S. at 164 ); *see also United States v. Christakis,* 238 F.3d 1164 (9th Cir. 2001); *United States v. Kenney,* 911 F.2d 315 (9th Cir. 1990). Speculation is not enough. Accordingly, the court must balance the defendant's right to counsel of his choice with the defendant's right to representation by counsel who is free from conflict. Trial courts presented with a possible conflict have an affirmative duty to protect the defendant's rights. *Allen,* 831 F.2d at 1494.

A criminal defendant can waive his Sixth Amendment rights. *Id.* at 1494. Waiver of the right to conflict-free counsel must be voluntary and "'constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which

depends in each case upon the particular facts and circumstances surrounding that case including the background, experience, and conduct of the accused.'" *Id.* at 1498 *(quoting Edwards v. Arizona,* 451 U.S. 477, 482 (1981))  The Ninth Circuit does "not require that a defendant predict that particular dilemmas will present themselves...but we do require that a defendant know about all of the risks that are likely to develop." *Id.* at 1500.

> The U.S. Supreme Court has observed that:
>
>> [u]nfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass darkly. The likelihood and dimensions of nascent conflicts of interests are notoriously hard to predict, even for those thoroughly familiar with criminal trials.
>
> *Wheat,* 486 U.S. at 162-163. The *Wheat* court also stated that:
>
>> the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Id.* at 163.

Here, the Government conceded that: "if [Defendant] is willing to...make any necessary waivers on the record that he does not feel that this will in any way impact upon his proper defense, then provided the Court feels so, a waiver on the record can probably take care of this problem [concerning Mr. Roman]...and I believe that there is such a waiver." (Id. at p.3)  Indeed, Defendant, who has studied law and has a university level education, initially filed an avowal waiving "the right to conflict-free counsel in regards to [sic] Mr. Roman" (Defendant's Avowal, p.2 attached to Defendant's Response to Government's Motion for Disqualification Due to Conflict of Interest).  Thereafter, Defendant made the waiver in open court under oath (TR. pp. 17-24), and after the hearing Defendant filed an affidavit stating same (September 21, 2001 Affidavit).

As to Mr. Ralls' representation of Mr. Loera-Guzman in 1989, nothing on this record suggests that Mr. Ralls' prior representation of a brother of a co-conspirator in the instant

case would actually affect or have the serious potential to affect his representation of Defendant.

Regarding the fee-payer, the record reveals that Defendant, at his June 13, 2001 initial appearance, filed a financial affidavit of indigence. (Government's Supplemental Motion for Disqualification, Ex. C & D) Attorney Francisco Leon was appointed to represent Defendant. (Id. at Ex. E) On July 17, 2001, counsel filed a Stipulation for Substitution of Counsel indicating that Mr. Ralls would now be representing Defendant. (Id. at Ex.F)

In *Quintero v. United States,* 33 F.3d 1133, 1135 (9th Cir. 1994) the Ninth Circuit stated that:

> This opinion is being published to alert trial judges, particularly in drug cases, to determine whether or not third parties are paying the fees of retained counsel when the defendant is indigent and, if so, whether the defendant understands the potential conflict of interest that may exist in such an arrangement and voluntarily waives that conflict.

*Id.* at 1134. The court also quoted the U.S. Supreme Court's recognition of

> "inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest."

*Id.* at 1135 (quoting *Wood,* 450 U.S. at 268-269).

At the hearing, Defendant, while under oath, stated that he knew who was paying Mr. Ralls' fee, that he understood that the possibility for conflict arises with regard to a third-party payer, and that he is willing to waive that conflict. (TR. 30-32) On September 21, 2001, Mr. Ralls filed a sealed affidavit regarding the fee payer. Upon consideration of Defendant's knowing and intelligent waiver at the hearing, in addition to his affidavit filed September 21, 2001 waiving any conflict with regard to the fee payer and Mr. Ralls' September 21, 2001 sealed affidavit, the Magistrate Judge recommends that the Government's Motion be denied.

**RECOMMENDATION**

Defendant has waived all conflicts which may arise out of his counsel's prior representation of Mr. Roman or any conflict which may arise as a result of a third party paying Mr. Ralls' attorney's fees. Therefore, the Magistrate Judge recommends that the District Court, after its independent review of the record, which includes the instant motions and responses thereto, in addition to the transcript of the September 18, 2001 hearing and *in camera* proceeding, Mr. Ralls' September 21, 2001 sealed affidavit and Defendant's September 21, 2001 affidavit, deny the Government's Motion for Disqualification Due to Conflict of Interest and grant Defendant's Motion to Quash Subpoena.

The parties may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: CR 91-446-TUC-FRZ.

DATED this 3rd day of October, 2001.

_____
NANCY F. FIORA
United States Magistrate Judge